IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JORDAN TUMINARO,

                                        OPINION AND ORDER

              Plaintiff,

                                        11-cv-203-bbc

    v.

THE GARLAND COMPANY, INC.,

              Defendant,

    v.

APEX BUILDING CONSULTANTS, LLC,

              Third Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In this civil case brought under state law, plaintiff Jordan Tuminaro seeks to invalidate various restrictive covenants he signed for his former employer the Garland Company, Inc., including a noncompete agreement and a confidentiality agreement. Plaintiff filed this lawsuit in state court, but defendant removed it under 28 U.S.C. §§ 1441 and 1446.

      Although the parties have finished briefing an early motion for summary judgment filed by plaintiff, I have been unable to resolve that motion because of questions that remain

1

regarding subject matter jurisdiction. Because all claims in this case arise under state law, jurisdiction must come from 28 U.S.C. § 1332, which requires diversity of citizenship and an amount in controversy greater than $75,000. As the proponent of jurisdiction, defendant has the burden to show that jurisdiction is present. Smart v. Local 702 International Brotherhood of Electrical Workers, 562 F.3d 798, 802-03 (7th Cir. 2009). The parties' previous submissions demonstrated that the requirement for diversity of citizenship is met, but the amount in controversy was not clear. As requested by the court, defendant has submitted supplemental materials to address this question.

Determining the amount in controversy is complicated because plaintiff does not seek damages in his complaint. Rather, his sole request for relief is to declare the restrictive covenants invalid. When the plaintiff is seeking an injunction or declaration, the task is to measure "the value of the object of the litigation." Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 347 (1977). In this circuit, "the object may be valued from either perspective—what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand." Macken ex rel. Macken v. Jensen, 333 F.3d 797, 799–800 (7th Cir. 2003). See also Uhl v. Thoroughbred Technology and Telecommunications, Inc., 309 F.3d 978, 983 (7th Cir. 2002) ("[T]he jurisdictional amount should be assessed looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief—the so-called 'either viewpoint' rule."). Further, the court may not

2

use counterclaims defendant raised after removal to calculate the amount in controversy. Warren Loveland, LLC v. Keycorp Investment L.P. IV, 2005 WL 1427707, *3–4 (W.D. Wis. 2005). Accordingly, I directed defendant to "show that plaintiff may gain more than $75,000 if he prevails on his claim for a declaratory judgment or that it will cost defendant more than $75,000 to comply with the requested declaration." Dkt. #54, at 5.

In its response, defendant relies on the following facts to show that the amount in controversy meets the jurisdictional minimum: (1) from 2007-2009, plaintiff's gross sales were more than $600,000 each year and defendant's profits from those sales were more than $250,000; (2) from 2007-2009, plaintiff earned more than $200,000 from defendant; and (3) in 2010, after plaintiff left the company and began competing with defendant, the sales for his region plummeted from $932,625 to $105,990 and profits fell from $404,155 to $45,588. In addition, defendant says, the confidential information in plaintiff's possession, including customer lists, costs and profit margins, are worth more than $75,000, but it relies on the same evidence to establish the worth of that information.

Defendant cites several cases for the proposition that a court may determine the amount in controversy in a case involving a noncompete agreement by looking to the profits the employer earned on business generated by the employee before leaving the company and the losses sustained after his departure. Basicomputer Corp. v. Scott, 973 F.2d 507, 510 (6th Cir. 1992); USAchem, Inc. v. Goldstein, 512 F.2d 163, 170 (2d Cir. 1975); Premier

3

Industries Corp. v. Texas Indus. Fastener Co., 450 F.2d 444 (5th Cir. 1971); Mailwaukee Mailing, Shipment and Equipment, Inc. v. Neopost, Inc., 259 F. Supp. 2d 769, 773 (E.D. Wis. 2003); Zimmer-Hatfield, Inc. v. Wolf, 843 F. Supp. 1089 (S.D. W. Va. 1994); Robert Half Intern., Inc. v. Van Steenis, 784 F. Supp. 1263 (E.D. Mich. 1991). However, one important difference between this case and the cited cases is that the plaintiff in each of the cited cases was the former employer, seeking to enforce the contract and stop the former employee from competing. Thus, the question in those cases was whether it was reasonable to infer that the employer stood to recover lost profits over the jurisdictional minimum if it prevailed in obtaining an injunction. In this case, the plaintiff is the employee and he is not seeking an injunction, only a declaration that the restrictive covenants are invalid.

Under the standard in Macken, the question is whether defendant has shown that a declaration in plaintiff's favor will cost defendant more than $75,000 or enable plaintiff to gain more than $75,000. Defendant fails to explain how the evidence it cites addresses either of this issues. It does not identify any costs it will incur in complying with plaintiff's proposed declaration or any money that plaintiff will gain. With respect to the latter issue, neither side suggests that plaintiff has limited his behavior in any way as a result of the noncompete agreement or that he will do anything differently if he prevails.

Although defendant's evidence suggests that defendant lost more than $75,000 after plaintiff left the company, defendant cannot recover those losses unless it prevails on its

4

counterclaims for breach of contract. A declaration regarding the validity of the underlying contract will not stop plaintiff from doing anything. As I noted above, I cannot consider the value of counterclaims in determining the amount of controversy.

It is true that success on plaintiff's claim would mean that defendant's counterclaims for breach of contract would be dismissed. However, that does not change the fact that it is the counterclaim, not plaintiff's requested declaration, that is worth more than $75,000. Allowing defendant to rely on its losses caused by plaintiff's alleged breach of contract would be an end-run around the rule in Warren Loveland. Accordingly, I conclude that defendant has failed to show that the amount in controversy is greater than $75,000 and I must remand this case to state court for lack of subject matter jurisdiction.

ORDER

IT IS ORDERED that this case is REMANDED to the Circuit Court for Dane County, Wisconsin for defendant Garland Company's failure to show that subject matter jurisdiction exists in this case.

Entered this 29th day of November, 2011.

                                                BY THE COURT:
                                                /s/
                                                BARBARA B. CRABB
                                                District Judge

6